IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FERNANDO GARCIA-RODRIGUEZ, an individual; and EBELINA VALADEZ-IZARRARAZ, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> MATTHEW K. GOMM, UNKNOWN DEA AGENTS 1-10, SALT LAKE CITY, CHIEF CHRIS BURBANK, LT. RICH BREDE, POLICE OFFICERS 1-10, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:14-cv-00828-CW <br><br> Judge Clark Waddoups |

## INTRODUCTION

This matter is before the court on a motion to dismiss each of plaintiffs' six causes of action filed by Salt Lake City Corporation, Chief Chris Burbank, Lt. Rich Brede, and Police Officers 1-10 (collectively "SLC Defendants"). (Dkt. No. 16.) After the SLC Defendants' motion was filed, but prior to oral argument, plaintiffs filed an amended complaint without first obtaining leave of the court. (Dkt. No. 18.) In the interest of judicial economy, the SLC Defendants addressed and responded to the issues presented in plaintiff's amended complaint in their reply memorandum. (Dkt. No. 20.) Plaintiffs objected to the SLC Defendants' reply memoranda and moved to strike statements made therein as well as the documents produced therewith. (Dkt. No. 25.) The court heard oral arguments on the motions on August 4, 2015 and took the matter under advisement. Upon review of the parties' filings, the court GRANTS

plaintiffs leave to amend their complaint and considers the allegations in plaintiff's amended complaint in its analysis of the SLC Defendants' motion to dismiss. For the reasons explained below, the court OVERRULES plaintiffs' objection and DENIES their motion to strike. (Dkt. No. 25.) Finally, after carefully considering the parties' briefs and oral arguments, the court now GRANTS the SLC Defendants' motion to dismiss. (Dkt. No. 16.)

## BACKGROUND

On June 1, 2012, the Drug Enforcement Administration (the "DEA") obtained a search warrant (the "2012 warrant") for the residence of Fernando Garcia-Rodriguez and Ebelina Valadez-Izarraraz (collectively "Plaintiffs"). (Dkt. No. 18, pp. 3–4.) The residence also houses Plaintiffs' car repair business, A Plus Auto Center. (*Id*. at 4.) The warrant authorized the officers to search for drugs and related items. It also authorized the officers to execute it without first announcing their presence, also referred to as a no-knock warrant. (Dkt. No. 18-1, pp. 2-4.) A SWAT team comprised of members of the DEA and Salt Lake City Police Department executed the warrant on June 5, 2012. (Dkt. No. 18, p. 4.)

To gain entry to the residence, the officers used explosives to open several garage doors which led to the commercial portion of the building. (*Id*.) After the first round of explosives failed to breach the entrance, in hopes of preventing destruction of expensive security doors, Valadez offered to open the doors for the officers. (*Id*.) The officers continued to use explosives, however, until they gained entry into the residence. (*Id*.)

The officers proceeded to the upstairs portion of the building and detained Plaintiffs, their twelve-year-old son and six-year-old daughter, and Valadez's seventeen-year-old sister. (*Id*. at 5.) Excepting the six-year-old daughter, everyone was handcuffed and allegedly remained so for

the duration of the search. (*Id*. at 5-6). The officers then searched the premises. Plaintiffs allege that during the search the officers loosened and broke several pieces of exterior lighting, knocked and loosened a security camera which subsequently fell and broke, scratched and damaged the interior and exterior of Plaintiffs' clients' cars, scratched car rims that were stored for commercial purposes, pulled up floor boards, broke holes in walls, and broke several interior doors. (*Id.* at 5–6.) No drugs or drug paraphernalia were found during the search. (*Id*. at 7.) Plaintiffs filed six causes of action under 42 U.S.C. § 1983, claiming Defendants violated their Fourth and Fourteenth Amendment rights.[1] These claims include: 1) invalid search warrant obtained through material false statements made either knowingly or in reckless disregard for the truth; 2) unlawful search and seizure; 3) supervisory liability or lack of training; 4) municipal liability against Salt Lake City; 5) unreasonable means used to effectuate the search and seizure; and 6) destruction of property. The SLC Defendants filed this motion to dismiss for failure to state a claim and asserted a qualified immunity defense.

As a preliminary matter, Plaintiffs did not initially name the SLC Defendants, nor allege facts against them, with regards to the first cause of action. Therefore, the SLC Defendants' motion to dismiss did not address that claim. Plaintiffs then filed their amended complaint naming the SLC Defendants in the first cause of action.[2] Rather than file a subsequent or

---

[1] Although page 2 of the amended complaint claims that the cause of action arises under the provisions of the Fourth, Fifth, and Fourteenth Amendments, Plaintiffs thereafter fail to allege any violations of the Fifth Amendment and therefore the court does not consider the validity of this claim.

[2] Although Plaintiffs failed to amend the first cause of action to reflect that they are seeking relief from the SLC Defendants under Section 1983 and not *Bivens*, the court will consider the claim as though it had been properly labeled as a Section 1983 claim. *See Barrett v. Tallon*, 30 F.3d 1296, 1299 (10th Cir. 1994) ("A complaint should not be dismissed under Rule 12(b)(6) merely because plaintiff's allegations do not support the legal theory he intends to proceed on, and certainly not when other theories are apparent on the face of the complaint") (internal quotation marks and citations omitted).

amended motion to dismiss, the SLC Defendants asked the court to dismiss the amended first cause of action against them in the reply memorandum they filed supporting their original motion to dismiss. The court therefore considers the SLC Defendants' motion to dismiss with regards to each of Plaintiffs' six causes of action.

## ANALYSIS

### I.      Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The court must "accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Albers v. Bd. of Cty. Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014).

### II.     Qualified Immunity

"Public officials are immune from suit under 42 U.S.C. § 1983 unless they have violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *City & Cnty. of San Francisco v. Sheehan*, ___U.S. ___, 135 S. Ct. 1765, 1774 (2015) (internal quotation marks omitted).  To overcome a qualified immunity defense, Plaintiffs bear the burden to demonstrate on the facts alleged: "(1) that the official violated a statutory or constitutional right; *and* (2) that the right was 'clearly established' at the time of the challenged conduct." *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (emphasis in original) (recognizing the court may decide "which of the two prongs of the qualified immunity analysis

should be addressed first in light of the circumstances in the particular case"). "Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). On a motion to dismiss, however, the SLC Defendants are subject "to a more challenging standard of review than would apply on summary judgment." *Id.* (recognizing that, "at the motion to dismiss stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness") (emphasis in original, internal quotations omitted).

### A. Invalid Search Warrant – Material False Statements Made either Knowingly or in Reckless Disregard for the Truth

Plaintiffs' first cause of action alleges the SLC Defendants violated their Fourth and Fourteenth Amendment rights by providing false information to Defendant Gomm, which false information was included in Defendant Gomm's affidavit and resulted in the issuance of an invalid search warrant for Plaintiffs' property.  To survive dismissal of this claim, Plaintiffs must sufficiently allege that: 1) "the affiant made a false statement knowingly and intentionally, or with reckless disregard for the truth;" and (2) "absent the false statement, the affidavit's remaining content is insufficient to establish probable cause." *United States v. Sanchez*, 725 F.3d 1243, 1247 (10th Cir. 2013) (internal quotations omitted). Although it is generally the affiant's truthfulness at issue, not the affiant's sources, *see id.*, the source's truthfulness may be relevant when the source is a government employee. *United States v. Campbell*, 603 F.3d 1218, 1228 (10th Cir. 2010) ("we hold the Government accountable for statements made not only by the affiant but also for statements made by other government employees which were deliberately or

recklessly false or misleading insofar as such statements were relied upon by the affiant in making the affidavit"). Such are the circumstances Plaintiffs allege here.

Plaintiffs allege that Agent Matthew Gomm of the Drug Enforcement Agency obtained the 2012 warrant based on false information the SLC Defendants provided him regarding the results of two prior search warrants executed on Plaintiffs' residence in September 2009 (the "2009 search").[3] The portions of Gomm's affidavit which Plaintiffs allege were falsely provided by the SLC Defendants are his statements that: 1) Garcia was selling cocaine from A Plus Auto on several different dates prior to the execution of the 2009 search; 2) Garcia previously sold cocaine to the Salt Lake City Police Department in the office area of the business; and 3) several ounces of cocaine, scales, a handgun and a shotgun were found during the 2009 search.[4] (Dkt. No. 18, pp. 15-16.) Plaintiffs contend that only a small amount of marijuana—not cocaine—was found in Garcia's brother's car and no scales or other paraphernalia were found during the 2009 search. (*Id.* at 14.) Plaintiffs further allege the SLC Defendants would have known the information in the affidavit was false because Plaintiffs "were not and have never been charged with any drug related offense [and] if cocaine and scales had been found in a search of their property then they most certainly would have been charged with something drug related." (*Id.* at 15).

---

[3] The warrants were issued on separate dates, but were both executed on September 24, 2009.

[4] Plaintiffs also challenge a statement regarding the location where an unspecified amount of cash was found. Gomm's affidavit states it was found at the bottom of a laundry hamper, which Plaintiffs claim is false. Plaintiffs also allege that although guns were found on Plaintiff Garcia's person and seized during the 2009 search, the SLC Defendants should have known that they were legally owned with permits and had not been returned to Plaintiffs. The court finds these issues to be irrelevant because where the cash was found and the ownership and current location of the guns do not affect whether probable cause existed to search the residence.

In their reply to Plaintiffs' response to the SLC Defendants' motion to dismiss, the SLC Defendants submitted rebuttal documents related to the 2009 search along with arrest and conviction documents for Javier Garcia—Plaintiff Garcia's brother—who was arrested and convicted of possession of cocaine with intent to distribute as a result of the 2009 search. (Dkt. No. 20-10, p. 2.) Plaintiffs filed an objection to these documents on two grounds: 1) the information in the documents is outside the scope of their reply to the SLC's Defendants' motion to dismiss and, therefore, under DUCivR 7-1(b)(2)(A), it may not be considered; and 2) the documents "provide new evidence and facts inconsistent with the facts as stated in the Plaintiffs' Complaint" and therefore it is inappropriate to consider them on a motion to dismiss. (Dkt. No. 25, p. 2.)  Both arguments fail.

        *i.*      *Rule 7-1(b)(2)(A)*

DUCivR 7-1(b)(2)(A) limits a party's reply memoranda to rebuttal of matters raised in the memorandum opposing the party's motion. Plaintiffs' response to the SLC Defendants' motion raises issues concerning "the products of the search and seizure conducted by [the Salt Lake City Police Department] in 2009 and the various drug stings they allegedly carried out against Mr. Garcia." (Dkt. No. 17, p. 7.) Therefore, under DUCivR 7-1(b)(2)(A), the SLC Defendants may rebut these matters in their reply brief. They have done so by providing the affidavits supporting the 2009 search warrants which describe the "drug stings," the 2009 search warrants, and their accompanying returns. This information is well within the scope of Plaintiffs' response.

Additionally, Plaintiffs' amended complaint and opposition memoranda make much of the fact that Plaintiffs were not arrested following the 2009 search; however, when evaluating

Plaintiffs' allegations about whether the SLC Defendants' representations to Agent Gomm were materially false, evidence that Garcia's brother was arrested and convicted as a result of the 2009 search of Plaintiffs' property is valid rebuttal information.  Therefore, the SLC Defendants' reply did not exceed the limitations imposed by DUCivR 7-1(b)(2)(A).

ii.     *Documents Outside of the Complaint*

Although the information in the SLC Defendants' reply did not exceed the limitations imposed by DUCivR 7-1(b)(2)(A), because the SLC Defendants supported their motion with documents that were not included in Plaintiffs' amended complaint, the court must also examine whether this inclusion is appropriate.  "Generally, the sufficiency of a complaint must rest on its contents alone. [Nevertheless,] [t]here are exceptions to this restriction on what the court can consider, [including] matters of which the court may take judicial notice." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (internal quotation marks and citations omitted). The Tenth Circuit has noted that although not obliged to do so, a court in its discretion may "take judicial notice of publicly-filed records in [federal] court and certain other courts concerning matters that bear directly upon the disposition of the case at hand." *United States v. Ahidley*, 486 F.3d 1184, 1192, n. 5 (10th Cir. 2007).  SLC Defendants' submission of "an indisputably authentic copy" of documents referenced in Plaintiff's complaint and central to Plaintiff's claims is appropriate for the court's consideration on a motion to dismiss.  *Needham v. Fannie Mae*, 854 F. Supp. 2d 1145, 1148 (D. Utah 2012) ("If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied").  Here, the information in these documents bears directly upon the disposition of Plaintiffs' claims. Each of the documents submitted by the SLC Defendants is a publicly-filed

record in the Third District Court for the State of Utah.  (Dkt. No. 20-1 to 20-10.)  Their

existence and contents were referenced by Plaintiffs in paragraphs 72-80 of the amended

complaint, but not attached.  (Dkt. No. 18, pp. 14-16.)  Plaintiffs allege that they were prevented

from obtaining these documents prior to filing their complaint because they were sealed court

records, but intended to seek these documents during discovery. (Dkt. No. 27, p. 2.)

       The court further notes that pursuant to Rule 201 of the Federal Rules of Evidence, the

court notified the parties of its intent to take judicial notice of the 2009 affidavits, search

warrants, search warrant returns, and records relating to the arrest and conviction of Javier

Garcia and granted Plaintiffs fourteen days to provide an argument in opposition.  The Plaintiffs

have now provided additional briefing, which they requested opportunity to provide before the

court considers them for "the truth of the matters asserted therein."  (*Id.*, p. 4.) Upon review of

Plaintiffs' argument, the court now finds no reason why judicial notice should not be taken.

Plaintiffs argue that the court should not take judicial notice of these documents because, first,

the records cannot "be accurately and readily determined from sources whose accuracy cannot

reasonably be questioned."  (Dkt. No. 34, p. 3.)  In support of this argument, Plaintiffs cite

numerous cases allegedly supporting the proposition that affidavits from a person, including a

government employee, cannot be judicially noticed for the purpose of contradicting allegations

in a complaint because they are not a "source whose accuracy is beyond reasonable question."

(*Id.*) The cases cited, however, are unpersuasive because they are both distinguishable and

irrelevant to the issue of whether the SLC Defendants deliberately or recklessly made materially

false or misleading statements, without which there would not have been probable cause to issue a search warrant.[5]

Second, Plaintiffs argue that they reasonably dispute the "facts" contained in the records and thus the records should not be admitted for purposes of demonstrating that the arguments and allegations against them are "true and accurate."  (Dkt. No. 34, p. 3, 7.)  In support they cite *Missud v. Nevada*, 861 F. Supp. 2d 1044, 1054 (N.D. Cal. 2012), aff'd, 520 F. App'x 534 (9th Cir. 2013), where a plaintiff sought judicial notice of over 1,300 pages of documents at the motion to dismiss stage of litigation to substantively prove that his arguments and allegations against the defendants were true.  The *Missud* court actually granted plaintiff's request to the

---

[5] Plaintiffs cite *United States v. Estep*, 760 F.2d 1060, 1063 (10th Cir. 1985), which supports a proposition directly in contrast to Plaintiffs' argument.  There, defendant alleged that the court abused its discretion by taking judicial notice of the "trial transcript of the earlier portions of the same proceeding," notwithstanding that the defendant and her attorney were not present at the criminal trial, lacked an opportunity to hear the trial testimony, and were thus not able to rebut any evidence based on the trial transcript. The appellate court found no abuse of discretion, and noted that a judge "looks to other court records in order to 'pierce the formalities of all of the transactions in question,' particularly when it involves 'the same proceeding or in a prior stage of the same controversy.'"  Id. at 1063.  Plaintiffs also cite *United States v. Burch*, 169 F.3d 666, 672 (10th Cir. 1999), a case where the defendants were not given an opportunity to be heard pursuant to Federal Rule of Evidence 201(e), to show that a court could not take judicial notice of a government employee's affidavit  because the source's accuracy was not beyond reasonable question. There, however, the issue was a county assessor's hearsay affidavit that the location at which defendant's offense was committed occurred within geographical boundaries that gave the court jurisdiction. The court's objection to it was that it was not an official government map and failed to show relevant boundaries and thus was not a source whose accuracy could not reasonably be questioned.  It does not stand for the general proposition inferred by Plaintiffs that a government employee's affidavit is inherently inaccurate and thus unsuitable for judicial notice.  Plaintiffs also string cite to *Ass'n Against Discrimination in Emp't, Inc. v. City of Bridgeport*, 647 F.2d 256, 277-78 (2nd Cir. 1981) (taking judicial notice of a city's budget to reflect the use of federal funds under the Emergency Employment Act for the purpose of employment in the City's fire department would have been proper had the published budget been noticed, but what was actually noticed was an affidavit from a paralegal that characterized a "Public Employment Employee Roster" as evidence that federal money was used by the City to hire personnel for the fire department) and *Groundhog v. Keeler*, 442 F.2d 674, 681 (10th Cir. 1971) (an affidavit for purposes of distribution of estate certifying that an individual descended from enrolled parents has a 1/16 degree of Indian blood was not appropriate for judicial notice to prevent a court from dismissing an action for want of jurisdiction when the claim was that the individual was not a citizen of the tribe by blood for purposes of being its chief.) Neither case persuades the court that judicial notice of the affidavits, warrants, and arrest/conviction records is inappropriate here.

extent of admitting "official court documents from other proceedings" but noted that it could not agree with the plaintiff's "characterization of the meaning of those documents" or admit the unofficial documents.  *Id.* Here, the SLC Defendants do not allege that all content in its submitted documents is entirely "true and accurate," nor must it be pursuant to *Franks v. Delaware*, 438 U.S. 154, 165 (1978) (absolute correctness of underlying facts is not required in an affidavit alleging probable cause to issue a search warrant). They merely allege that these official court documents rebut Plaintiffs' allegation that the SLC Defendants knew that they were making deliberately or recklessly false or misleading statements so that an invalid search warrant could be obtained, which is an appropriate purpose for which the court can take judicial notice.

Third, Plaintiffs argue pursuant to *United States v. Boyd*, 289 F.3d 1254, 1258 (10th Cir. 2002) that taking notice of a fact "whose application is in dispute" prejudicially removes the "weapons [of rebuttal evidence, cross-examination, and argument] from the parties and raises doubt as to whether the parties received a fair hearing." In *Boyd*, the issue was whether a trial court erroneously took judicial notice of a scientific fact during sentencing about which no evidence was introduced at trial and which otherwise did not meet the standards for judicial notice.  Here, the standards for judicial notice are met where the documents are accurate copies of judicial records, where absolute accuracy of the underlying facts is not required to demonstrate probable cause to issue the warrant, and where the purpose of judicial notice is to allow the SLC Defendants an opportunity to rebut Plaintiffs' claims that they knew the underlying facts were false.

Fourth, Plaintiffs allege that the arrest and conviction records of Javier Garcia have no bearing on the case.  (Dkt. No. 34, p. 3-4.)  This is incorrect, because the SLC Defendants'

knowledge that a drug arrest did result from the 2009 search of Plaintiffs' property—even though the arrest was not of Plaintiffs themselves—does have a bearing on whether the SLC Defendants made deliberately or recklessly false or misleading statements that led to the issuance of the 2012 warrant.

Finally, Plaintiffs argue that if the documents are judicially noticed, they should only be used to show the existence of the proceedings to which they relate, not for the accuracy of the allegations made.  (Dkt. No. 34, p. 4.)  However, Plaintiffs previously argued that the court should "only consider these documents for 'their contents, not to prove the truth of matters asserted therein,'" if it denies Plaintiffs' request for additional briefing on the documents.  (Dkt. No. 27, p. 4.)  The court has provided that opportunity.  In light of all of the foregoing, the court takes judicial notice of the documents submitted by SLC Defendants to evaluate whether the SLC Defendants knowingly and intentionally, or with reckless disregard for the truth, made false statements without which the remaining affidavit's content is insufficient to establish probable cause.  *See Sanchez*, 725 F.3d at 1247.  For these reasons, Plaintiffs' objection is OVERRULED and their motion to strike is DENIED.

### iii.   Sufficiency of Complaint

In light of the information contained in the judicially noticed documents, the court now assesses the sufficiency of Plaintiffs' amended complaint with respect to count one.

"[F]actual allegations that contradict a properly considered document are not well-pleaded facts that the court must accept as true." *Farrell-Cooper Min. Co. v. United States DOI*, 728 F.3d 1229, 1237, n. 6 (10th Cir. 2013). The court, therefore, begins its analysis by identifying Plaintiffs' allegations that are not entitled to the assumption of truth. *See Ashcroft v.*

*Iqbal*, 556 U.S. 662, 680 (2009). Plaintiffs allege no cocaine, scales or other paraphernalia were found during the 2009 search. (Dkt. No. 18, p. 14.) This is contradicted by the warrant documents which state that 18.9 grams of cocaine and a scale were seized during the 2009 search. (Dkt. No. 20-3, p. 2.) This information is further supported by the court documents relating to Javier Garcia's arrest and conviction. (Dkt. No. 20-9 to 20-10.)  Plaintiffs' supplemental memorandum in opposition to the court's notice of intent to take judicial notice admits that "the scale was found and Javier admitted it was his and that he had additional drugs in his car."  (Dkt.  No. 34, p. 6.)  Therefore, the court finds that Plaintiff's allegations that no cocaine, scales or other paraphernalia were found during the 2009 search are not entitled to the assumption of truth.

Plaintiffs further allege they never sold cocaine to anybody, including the Salt Lake City Police Department. However, the affidavit supporting the first 2009 warrant describes in significant detail two controlled cocaine purchases involving Plaintiff Garcia at A Plus Auto Center by a confidential informant supervised by the Salt Lake City Police Department (Dkt. No. 28-1, p. 4.) The Supreme Court has long held there is "a presumption of validity with respect to the affidavit supporting the search warrant" and any "attack must be more than conclusory." *Franks,* 438 U.S. at 171.  Plaintiffs' only attack on the confidential informant's controlled cocaine purchases from Plaintiff Garcia is the conclusory allegation that the statement is false, and that if it had been true, Garcia would have been charged with a drug-related offense.  This is insufficient, particularly because there are other reasons why Garcia may not have been charged—for example, preservation of the confidential informant's identity.

Nevertheless, notwithstanding the significant detail regarding the controlled cocaine purchases by the confidential informant, the SLC Defendants acknowledge that three-year-old facts about Plaintiff Garcia's cocaine sales could be considered stale and insufficient "standing alone to demonstrate probable cause." (Dkt. No. 20, p. 5.) Instead, they argue that there was "more than enough information in the remainder of the Gomm Affidavit to support the Magistrate's probable cause determination." (*Id.*)

Although the conclusory attack on the 2009 warrant is insufficient, for the sake of thoroughness the court evaluates the Gomm Affidavit (Dkt. No. 18-2, pp. 33-45) redacting all allegations about Garcia having previously been involved in selling cocaine or illegal narcotics. For good measure, the court also redacts any reference to the concealment and location of cash seized or other paraphernalia beyond scales located at the business. Upon careful consideration of the affidavit thus redacted, the court agrees with the SLC Defendants that even without these facts, the Gomm Affidavit sufficiently identifies a group of individuals with whom Garcia was associated who were allegedly involved in the distribution and sale of drugs, correctly identifies that cocaine, scales, a handgun and shotgun with ammunition, and a large amount of cash were seized in 2009 from the A Plus Auto premises, that surveillance equipment monitoring the business and residence was present, that "Fernando" (Garcia) was associated with an individual named "CHILAS" (who was unknowingly involved in an undercover purchase of heroin by a confidential source) as well as other alleged heroin traffickers who had been at the A Plus Auto premises, that numerous phone calls had been made between Garcia and one of these individuals, and that visual surveillance of the pattern of exits and entrances from vehicles at A Plus Auto was consistent with the affiant's experience with drug trafficking. Without any reference to

information Plaintiffs challenge as having been inaccurately provided to Agent Gomm by the

SLC Defendants, the court determines that there is still sufficient evidence to support a probable

cause determination for the 2012 warrant.

As there are no other allegations against the SLC Defendants with regards to the invalid

warrant claim, Plaintiffs have failed to state a claim for relief against SLC Defendants.  As such,

the court GRANTS the SLC Defendants' motion with respect to Plaintiffs' first cause of action.

**B.      Unreasonable Search and Seizure**

Plaintiffs' second cause of action alleges the search and seizure violated their rights under

the Fourth and Fourteenth Amendments. The court first analyzes the reasonableness of Plaintiffs'

detention and then the search and seizure of Plaintiffs' property.

*i.      Detention of Plaintiffs*

It is well established that "a warrant to search for contraband founded on probable cause

implicitly carries with it the limited authority to detain the occupants of the premises while a

proper search is conducted." *Mich. v. Summers*, 452 U.S. 692, 705 (1981). Such a detention

"represents only an incremental intrusion on personal liberty when the search of a home has been

authorized by a valid warrant." *Id.* at 703. Furthermore, officers are allowed to detain the

occupants of the residence throughout the duration of the search. *See Muehler v. Mena*, 544 U.S.

93, 98 (2005) (holding the plaintiff's "detention for the duration of the search was reasonable

under *Summers* because a warrant existed to search [the premises] and she was an occupant of

[the premises] at the time of the search."); *United States v. Johnson*, 414 Fed. Appx. 176, 179

(10th Cir. 2011) ("As long as a person is an occupant of the premises identified in a search

warrant, officers have 'categorical' authority to detain him or her for the duration of the

search."). Finally, the Supreme Court has held that the use of handcuffs to detain occupants of the premises is reasonable when a warrant authorizes the search for weapons or drugs as these situations present inherently dangerous circumstances. *See Muehler*, 544 U.S. at 100; *Summers*, 452 U.S. at 702–03 (recognizing the execution of a warrant to search for drugs "may give rise to sudden violence or frantic efforts to conceal or destroy evidence").

Here, Plaintiffs were the occupants of the premises subject to a valid search warrant. SLC Defendants, therefore, had categorical authority to detain them for the duration of the search. Additionally, the warrant was issued based upon suspected drug activity on the premises. Indeed, it was the inherent danger of the authorized search for drugs that prompted the magistrate to issue a no-knock warrant. It follows that the SLC Defendants' use of handcuffs was within the boundaries of reasonableness as recognized by the Supreme Court.[6]  As such, Plaintiffs have failed to allege sufficient facts to establish a constitutional violation based upon the length and manner of their detention.[7]

        ii.     *Search and Seizure of Plaintiffs' Property*

"[T]he Fourth Amendment requires that warrants particularly describe the place to be searched and prohibits officers executing the warrant from exceeding the warrant's scope." *Campbell v. City of Spencer*, 777 F.3d 1073, 1077 (10th Cir. 2014). "[T]he particularity

---

[6] Plaintiffs allege it was unreasonable for the SLC Defendants to handcuff their twelve-year-old son. However, the court does not consider this argument because the son is not a party to this case.

[7] Inasmuch as Plaintiffs allege the SLC Defendants directed racial slurs and other derogatory language at them, this, with nothing more, is insufficient to establish a claim for an unreasonable search and seizure. *See Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1194 (10th Cir. 2001) ("While it seems unlikely that harsh language alone would render a search or seizure 'unreasonable,' verbal abuse may be sufficient to tip the scales in a close case").  SLC Defendants' harsh language is a factor to be analyzed under the totality of the circumstances of the detention. However, given the lack of factual allegations supporting a claim that the SLC Defendants unreasonably detained Plaintiffs, this is not a case where the use of harsh language would tip the scales in Plaintiffs' favor.

requirement prevents general searches and strictly limits the discretion of the officer executing

the warrant." *United States v. Webster*, 809 F.3d 1158 *14 (10th Cir. 2016) (internal quotations

omitted). The warrant at issue here met the Fourth Amendment's particularity requirement by

describing the premises to be searched, i.e., "[t]he residence located at A Plus Auto-945 South

Gale Street, Salt Lake City Utah" and "any vehicles, and surrounding storage units associated

with the residence . . . including vehicles which have been associated with the residence, which

may be parked at different locations in close proximity to the residence." (Dkt. No. 18-1, p. 3.)

Additionally, the warrant described the property the officers were authorized to seize. (*Id*.)

Finally, it is undisputed that the officers searched "the interior and exterior of the property

including searching the Plaintiffs' client's vehicles that were at their premises undergoing

repairs." (Dkt. No. 18, p. 5.) These areas were reasonably within the scope of the search warrant.

Additionally, the items seized included money, three cell phones, a vehicle, and various

documents, all of which were specifically authorized by the warrant. (Dkt. No. 18-1, p. 3.)

Therefore, Plaintiffs have not alleged sufficient facts to support a claim for a constitutional

violation relating to the execution of the search warrant. As such, Defendants' motion is

GRANTED with respect to Plaintiffs' second and fifth causes of action.

### C.    Destruction of Property

Plaintiffs claim the SLC Defendants violated their Fourth and Fourteenth Amendment

rights by causing unreasonable destruction to their property while executing the warrant.

Pursuant to *Quinn*, 780 at 1004, the court determines that this issue is most efficiently resolved

by first analyzing the "clearly established" prong of the SLC Defendants' qualified immunity

defense.

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008) (internal quotation marks omitted). Although there need not be a case precisely on point, the contours of the right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Walton v. Gomez (In re Estate of Booker)*, 745 F.3d 405, 411 (10th Cir. 2014). Accordingly, in assessing whether the right is clearly established, the court cannot define the right "at a high level of generality." *Cox v. Glanz*, 800 F.3d 1231, 1245 n.6, 1247 n.8 (10th Cir. 2015), *Young*, 780 F.3d at 1005 ("the general proposition that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established."). Finally, it is the plaintiff's burden to demonstrate to the court, through relevant case law, that the right in question was clearly established. *Id* at 1245.

Here, Plaintiffs "made no more than an anemic attempt to carry this burden as to the clearly-established-law question, merely asserting in bare-bones fashion," *id.*, that they have a constitutional right to be free from "unnecessarily destructive behavior, far beyond that necessary to execute the warrant effectively." (Dkt. No. 18, p. 7). Not only is this assertion of their constitutional right on the very level of generality the Tenth Circuit has prohibited in a qualified immunity analysis, *see Cox*, 800 F.3d at 1245–46, but the cases Plaintiffs cite are not sufficiently on point to show the SLC Defendants violated a clearly established right.

For example, Plaintiffs cite *Panaderia La Diana, Inc. v. Salt Lake City Corp.*, 342 F.Supp.2d 1013 (D. Utah 2004) *aff'd sub nom. Trevizo v. Adams*, 455 F.3d 1155 (10th Cir.

2006). Not only is this not a decision from the Tenth Circuit or the Supreme Court, but the court in *La Diana* held there was no unnecessarily destructive behavior and provided no analysis as to what would have been considered unreasonable so as to put subsequent officers on notice. Therefore, that decision does not assist the court's analysis in the present case.

Additionally, Plaintiffs cite *Mena v. City of Simi Valley*, 226 F.3d 1031 (9th Cir. 2000). This decision also does not come from the Tenth Circuit or the Supreme Court.  Also, one case from the Ninth Circuit is insufficient to demonstrate the clearly established weight of authority from other courts about a constitutional right. Nevertheless, even assuming *Mena* were persuasive, it is easily distinguishable from the present case. In *Mena*, the officers executed a knock and announce warrant on the plaintiff's residence.  The officers allegedly proceeded to break numerous doors that were already open. The plaintiff testified in a deposition that she saw an officer break an open door and state, "I like to destroy these kind[s] of materials, it's cool." *Id.* at 1041. The Ninth Circuit held that a "reasonable officer would have known that such conduct . . . was unlawful" and therefore denied qualified immunity. *Id.*

Unlike *Mena*, SLC Defendants here were authorized to execute a no-knock warrant. This carried with it the implication that they would have to destroy Plaintiffs' doors in order to enter the residence. Plaintiffs do not allege any of the doors were already open or that breaking the doors was not directed at executing the warrant effectively. Therefore, *Mena* does not assist the court's analysis. As such, Plaintiffs have failed to satisfy their burden of demonstrating that the SLC Defendants' behavior violated a clearly established right. For this reason, the court GRANTS the SLC Defendants' motion with regards to Plaintiffs' sixth cause of action.

**D.**     **Claims against Salt Lake City Police Chief Chris Burbank and Lieutenant**

**Rich Brede**

Plaintiffs allege Salt Lake City Police Chief Chris Burbank and Lieutenant Rich Brede

are liable for violations of Plaintiffs' constitutional rights either on the basis of supervisory

liability or lack of training.

*i.     Supervisory Liability*

Section 1983 does not allow a plaintiff to impose liability upon a defendant-supervisor

based on "a theory of respondeat superior." *Cox*, 800 F.3d at 1248. Liability for a constitutional

violation must instead be satisfied by establishing defendant-supervisor's personal participation

in the violation of the plaintiff's constitutional rights, or by showing the supervisor created,

promulgated, or implemented "a policy which subjects, or causes to be subjected that plaintiff to

the deprivation of any rights secured by the Constitution." *Id.* (internal quotation marks omitted).

"A plaintiff arguing for the imposition of supervisory liability therefore must show an

affirmative link between the supervisor and the constitutional violation." *Id.* (internal quotation

marks omitted). Plaintiffs have failed to allege such an affirmative link.

The extent of the allegations against Burbank and Brede are that Plaintiffs "believe[] that

Burbank and Brede personally directed the violation of constitutional rights or had knowledge of

the violation and acquiesced to its continuance …" (Dkt. No. 18, p. 18.) This is nothing more

than a recital of the elements of a supervisory liability claim and is therefore insufficient to state

a claim for relief. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or

'a formulaic recitation of the elements of a cause of action will not do.'"). Plaintiffs allege no

facts to support their allegations apart from the fact that these men served in a supervisory role over the Salt Lake City Police Department. This is nothing more than an attempt to bring a claim based on respondeat superior and is therefore insufficient to state a claim for supervisory liability. Finally, the allegation that Burbank and Brede had knowledge of and acquiesced to the violation of Plaintiffs' constitutional rights is the very argument the Supreme Court rejected in Iqbal. *Id.* at 677. Therefore, Plaintiffs have failed to state a claim for supervisory liability.

ii.     *Lack of Training*

Alternatively, Plaintiffs claim that Burbank and Brede are liable for failing to adequately train the officers who conducted the search of Plaintiffs' residence. This claim also fails. To sustain a Section 1983 claim against a supervisor for failing to train his subordinates which results in the violation of an individual's constitutional rights, there must be a showing of deliberate indifference on the part of the supervisor. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011) (analyzing a failure-to-train claim brought against a municipality). To establish deliberate indifference in this context, a plaintiff must show the supervisor "was on notice that, absent additional specified training, it was 'highly predictable'" that his subordinates would engage in actions that would violate the constitutional rights of those with whom they would come in contact. *Id.* at 71. Plaintiffs have made no attempt to satisfy this requirement. Indeed, the only allegation of deliberate indifference in the entirety of the amended complaint is directed at the behavior of the officers who executed the search warrant. (Dkt. No. 18, p. 18-19.) There are simply no allegations that Burbank or Brede were on notice that further training was necessary to avoid constitutional violations, let alone that they were deliberately indifferent towards such a

need. Therefore, the SLC Defendants' motion is GRANTED with regards to Plaintiffs' third cause of action.

### E.    Municipal Liability

Finally, Plaintiffs' fourth cause of action alleges municipal liability against Salt Lake City based on allegations of an unconstitutional policy or practice followed by the SLC Defendants in executing the warrant. The Tenth Circuit has held that "[a] municipality is not liable solely because its employees caused injury. Rather, a plaintiff asserting a § 1983 claim must show 1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged." *Mocek v. City of Albuquerque*, — F.3d— 2015 U.S. App. LEXIS 22435 *38, 2015 WL 9298662 *14 (10th Cir. 2015) (internal citations and quotation marks omitted). In other words, "[t]hrough its deliberate conduct, the municipality must have been the moving force behind the injury." *Id.* (internal quotation marks and emphasis omitted).

Plaintiffs' complaint alleges the warrant was likely executed pursuant to standard operating procedure and led to widespread constitutional violations. (Dkt. No. 18, p. 20.) Additionally, it states Plaintiffs' belief that "there is a standard policy when executing a no-knock warrant" that "officers use whatever means necessary to break open the doors and detain and handcuff all occupants." (*Id.*) Nevertheless, Plaintiffs cite no particular facts to support these "threadbare recitals of the elements of a cause of action." *Mocek*, U.S. App. LEXIS 22435 at *38, 2015 WL 9298662 at *14. Rather, Plaintiffs's amended complaint relies only on language from this court stating that "[w]here a warrant is executed pursuant to standard operating procedure leading to widespread constitutional violations, there is likely to be evidence of a

practice or policy." (Dkt. No. 18, p. 19) (citing *Panaderia La Diana, Inc. v. Salt Lake City Corp.*, 342 F. Supp. 2d 1013, 1034 (D. Utah 2004)). Although this may be true, as explained above, Plaintiffs have not alleged sufficient facts to support the predicate allegations of widespread constitutional violations. Even if Plaintiffs had sufficiently alleged such widespread constitutional violations, they have not alleged any facts to show the search was executed pursuant to standard operating procedure. They have only stated that such is their belief. Consequently, the amended complaint "stops short of the line between possibility and plausibility of entitlement to relief." *Mocek*, U.S. App. LEXIS 22435 at *38, 2015 WL 9298662 at *14. As such, the court GRANTS the SLC Defendants' motion with respect to Plaintiffs' fourth cause of action.

## CONCLUSION

For the reasons explained above, the court GRANTS the SLC Defendants' motion to dismiss each of Plaintiffs' causes of action against them.

DATED this 22nd day of February, 2016.

BY THE COURT:

Clark Waddoups
United States District Court Judge